## C. E. EVANS v. E. G. WALLINDER.[1]

December 1, 1922.

No. 23,079.

**Money lent—verdict for defendant sustained by evidence.**

> Action to recover upon two bank checks, alleged to have been drawn and given to defendant personally as a loan. The charge examined and found to have submitted the issues in a clear and forceful manner, without error, and that the proofs support the verdict.

Action in the district court for St. Louis county to recover $1,000. The case was tried before Dancer, J., who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict for defendant. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Fryberger, Fulton, Hoshour & Ziesmer,* for appellant.

*John Jenswold* and *John D. Jenswold,* for respondent.

[1]Reported in 190 N. W. 803.

QUINN, J.

The Kamloops Copper Company was organized as a mining corporation in 1909, under the laws of the state of Arizona, with its principal offices in the city of Duluth, Minnesota. It purchased a copper mine in Western Canada. There were 30 or more stockholders, of whom the defendant Wallinder was president, and the plaintiff Evans was a director from January, 1910, to November, 1916, during which time he generally attended the meetings of the board of directors, and was familiar with the affairs of the company. It was his custom to frequently drop into the office of the secretary in Duluth and talk over the affairs of the company. Monthly reports of the company's operations were there kept on file for inspection.

In November, 1913, the board of directors authorized the issuance and sale of 14,000 shares of the company's stock, or so much thereof as might be subscribed for by December 1, 1913. Plaintiff subscribed for 400 shares, for which he gave his note for $2,000, payable September 1, 1914, without interest. As he was about to leave for a trip to California, on February 6, 1915, he drew his two checks, each for $500, payable to the order of the defendant, sealed them in an envelope, and left them at the defendant's office. The defendant received the checks, had them cashed, and caused the amount to be indorsed upon the plaintiff's note for $2,000, which the company held. These checks form the basis of the present action. There was a verdict in favor of the defendant, and from an order denying his alternative motion for judgment or a new trial, plaintiff appeals.

Plaintiff bases his cause of action upon the two checks, claiming that they were given as a loan to the defendant personally. In his answer, defendant admits receiving the checks and the money thereon, but alleges that the same were given by plaintiff, and received by him as president of the Kamloops Company as payment on the note referred to, and that the amount thereof was indorsed on the note. In his reply plaintiff pleads a general denial, admits the execution of the note and that the same has never been paid, and alleges that the note was given for the purchase of 400 shares of

stock of the Kamloops Company, and then alleges fraud in the sale of the stock, and that he accordingly rescinded the contract of sale thereof and that the rescission was consented to by the company.

There are 12 assignments of error set forth in appellant's brief, which are argued under three headings; (1) Errors of the trial court in permitting the jury to find that there was a loan to the company; (2) error of the trial court in suggesting to the jury that they might make a finding of fraud against the plaintiff; and (3) errors of the trial court in refusing to direct a verdict in plaintiff's favor and refusing to grant judgment notwithstanding the verdict.

In submitting the case, the trial court repeatedly impressed upon the jury the claim of the plaintiff, that the checks were given as a personal loan to the defendant, and that, if they so found, the defendant could not escape liability, but if they found that they were given as payment on his note, or as a loan to the Kamloops Company, then the defendant would not be personally liable. There was a sharp conflict in the testimony in this respect, which was amply sufficient to support a verdict either way. The allegations of fraud as to the issue of stock were not an issue, but came into the trial as characterizing the transaction, and as bearing upon the weight of testimony. A careful reading of the charge impresses us with the idea that the case went to the jury in a clear and forceful manner.

Affirmed.